IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HP DEBT EXCHANGE LLC, | No. C -13-04717 EDL |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| WELLS FARGO BANK N.A., | |
| Defendant. | |

Defendant Wells Fargo has moved to dismiss this tort action against it on the grounds that Plaintiff HP Debt Exchange's claims rely upon contracts that Defendant has with other entities and to which Plaintiff is not a party or a beneficiary. Plaintiff has opposed the motion and Defendant filed a reply. For the reasons stated at the January 28, 2014 hearing and in this Order, Defendant's motion to dismiss is granted with leave to amend.

**Allegations from the complaint**

Plaintiff is an active participant in the secondary mortgage market, primarily buying unpaid mortgage notes. Compl. ¶ 6. Non-party Absolute Resolutions Corporation (ARC) is a buyer and seller of uncollected debt and an approved vendor of Defendant Wells Fargo Bank. Compl. ¶ 7. Non-party Brunswick Mutual is a buyer and seller of uncollected debt. Compl. ¶ 8. Plaintiff has a debt-buying relationship with Brunswick. Compl. ¶ 10. Brunswick has a debt-buying relationship with ARC. Compl. ¶ 11. ARC has a debt-buying relationship with Defendant. Compl. ¶ 12.

In 2010, Plaintiff learned that Defendant wanted to sell certain defaulted mortgage loans it acquired as a result of its acquisition of Wachovia Bank. Compl. ¶ 13. ARC reached out to Plaintiff to ascertain if Plaintiff was interested in buying the subject loans. Compl. ¶ 14. ARC and Brunswick facilitated the purchase of the subject loans from Defendant to Plaintiff. Compl. ¶ 15.

In particular, ARC purchased the subject loans from Defendant in or around November 26, 2010. Compl. ¶ 16. Defendant sold three portfolios to ARC, one composed of "secured" loans and two composed of "unsecured" loans. Compl. ¶ 17. Plaintiff alleges that Defendant knew that ARC was purchasing the subject loans in order to resell them on the secondary market. Compl. ¶ 18. Plaintiff alleges that Defendant knew that the purchaser of the subject loans was buying them in order to collect on their unpaid balances as well as to resell them on the secondary mortgage market. Compl. ¶ 19.

On or around November 26, 2010, ARC sold 1,627 unsecured junior loans and 889 secured mortgage loans to Brunswick. Compl. ¶ 20. Brunswick paid ARC $857,325.37 for the mortgage loans that ARC purchased from Defendant. Compl. ¶ 21.

On or around December 16, 2010, Brunswick sold the subject loans to Plaintiff for $907,325.37. Compl. ¶ 22. All of the purchase agreements arranged for the sale, transfer, and conveyance of mortgage loan documents, including, but not limited to, mortgage notes, allonges evidencing transfer of ownership of the notes, assignments of mortgage and loan origination documents. Compl. ¶ 23. When Plaintiff purchased the subject loans from Brunswick, it became the sole and rightful owner of the subject loans and all associated documents. Compl. ¶ 24. On December 20, 2010, Plaintiff sold approximately 100 of the loans to non-party Summit Real Estate Partners LP Series 2010-2. Compl. ¶ 25.

In January 2011, Plaintiff began communicating with Defendant about missing loan documents. Compl. ¶ 26. In February 2011, Plaintiff had not received the necessary loan documents and files associated with ownership of the subject loans. Compl. ¶ 27. On March 2, 2011, ARC informed Brunswick that the files were being gathered to be shipped by Defendant. Compl. ¶ 28. On March 7, 2011, ARC invoked their confidentiality agreement with Brunswick and directed Brunswick and its buyers not to contact Defendant about any post-sale matters. Compl. ¶ 30. On March 8, 2011, ARC demanded in writing that Brunswick and Plaintiff stop communicating with Defendant regarding files and other issues. Compl. ¶ 29.

In May 2011, Plaintiff received approximately fourteen boxes containing some of the subject loan documents, leaving a majority of the subject loans without loan files, allonges or

assignments. Compl. ¶ 31. In July 2011, Summit sued Plaintiff for failing to provide all of the loan documents associated with the subject loans it sold, thereby breaching Plaintiff's contract with Summit. Compl. ¶ 32.

In September 2011, Defendant's employee, Jason Beck, told two of Plaintiff's employees that Defendant does not provide all of the loan documents for these "low-level, low-priced" sales. Compl. ¶ 33. In December 2011, one of Plaintiff's employees asked Mr. Beck about 1,900 credit files and was told that Defendant does not usually provide those in a sale such as the one at issue. Compl. ¶ 34. Plaintiff believes that the documents are stored by Iron Mountain in Boston and that Defendant has electronic copies of all loan documents, notes and mortgages. Compl. ¶ 35.

In February 2012, a Texas court found that Plaintiff was liable to Summit in the amount of $251,239.77 for failing to provide the loan documents. Compl. ¶ 36. In March 2012, Mr. Beck confirmed that the loan files transferred by Defendant were 25-30 pages each on the secured pool and even less on the unsecured pool. Compl. ¶ 37. According to Plaintiff, a complete mortgage file is usually 250 to 350 pages long. Compl. ¶ 38. Mr. Beck also stated that when Defendant sells notes individually or in bulk, it only delivers the note, the deed and allonge and maybe a payment history. Compl. ¶ 39. The sales contracts, however, provided for the sale, transfer, and conveyance of the "Servicing File and the Loan File" for unsecured loans and the "Servicing File" and "Mortgage Loan File" for the secured portfolios. Compl. ¶ 40. In the contract, the Loan File is defined as "the Note and the other Loan Documents and all other documentation, correspondence and records in the possession of or available to Seller." Compl. ¶ 41. The "Servicing File" is defined in the contracts as "the file maintained by the seller in connection with the servicing of the loan." Compl. ¶ 42. "Loan Documents" are defined as "the Note and any other documents in the Seller's possession or control creating or relating to the credit support for the Note, including . . . other documents, agreements or instruments under which legal sights or obligations are created or exist." Compl. ¶ 43.

In August 2012, Brunswick and Plaintiff initiated arbitration against ARC and Defendant under the contracts. Compl. ¶ 45. In the arbitration action, Defendant did not dispute or deny that approximately 2,500 loans were sold from Defendant to ARC to Brunswick to Plaintiff. Compl. ¶

3

46. However, Defendant prevailed on a motion to dismiss arbitration because Plaintiff was a non-signatory to the contract containing the arbitration clause. Compl. ¶ 46. The arbitration panel specifically held that Plaintiff could pursue other remedies by suing Defendant in court. Compl. ¶ 47.

Plaintiff alleges that at least 500 of the loans sold in the unsecured portfolios were in fact still secured by real property. Compl. ¶ 48. None of the contracts for the sale of the unsecured portfolios contained a definition or description of the term "unsecured." Compl. ¶ 49. Plaintiff believes that loans secured by property that were underwater at the time of the sale were deemed unsecured by Defendant. Compl. ¶ 50. Plaintiff alleges that Defendant has taken the position that Plaintiff is not entitled to any mortgage assignments for the loans that were sold in the unsecured portfolios. Compl. ¶ 51. Plaintiff also alleges that according to ARC, Defendant did not sell the mortgages associated with the unpaid promissory notes in the unsecured portfolios to ARC. Compl. ¶ 52. Therefore, ARC did not own any of the mortgages and could not have sold, transferred, or conveyed those to Brunswick, and Brunswick could not have conveyed them to Plaintiff. Compl. ¶ 52.

Plaintiff alleges that at the time of the complaint, at least 512 subject loans continued to lack assignments for the mortgages and nearly all of the loans lacked proper allonges. Compl. ¶ 54. Almost every loan was missing the loan and servicing files sold by Defendant and purchased by Plaintiff. Compl. ¶ 54. The allonges, assignments, and loan documentation are necessary for Plaintiff to enforce its ownership rights in the subject loans. Compl. ¶ 55. Plaintiff monetizes non-performing debt through litigation, rendering the provision of loan documents with the actual loans an essential part of its purchase of loans on the secondary market. Compl. ¶ 56. Without proper documentation, Plaintiff alleges that it cannot validate that it properly owns the debts, litigate any of the loans or protect its security interest based upon its ownership of any associated promissory notes. Compl. ¶ 57. Purchasers of non-performing unsecured uncollected debt generally recover eight to ten percent of the unpaid balance annually, with secured debt earning even more. Compl. ¶ 58. The unpaid principal balance of the subject loans, secured and unsecured, purchased by Plaintiff totals more than 127 million dollars. Compl. ¶ 59.

4

Plaintiff alleges that Defendant has actively collected on and settled debts that were sold to Plaintiff, and has taken actions that eliminate the security interest associated with notes sold to Plaintiff. Compl. ¶ 61. In December 2012, Defendant settled a debt that had been sold to Plaintiff through ARC and Brunswick with borrower Victor Milbourne. Compl. ¶ 62. In August 2013, Defendant was using a collection agency to collect on another unpaid loan that had been sold to Plaintiff through ARC and Brunswick from borrower Robert Knapper. Compl. ¶ 63.

In another case, a note owned by Plaintiff was still secured by property located at 4 Ellsmere Drive, Greenville, SC 29615. Compl. ¶ 64. Defendant owned the first mortgage on the property, but sold the second mortgage to Plaintiff through ARC and Brunswick as part of the unsecured portfolio. Compl. ¶ 64. Defendant did not provide an assignment of mortgage for Plaintiff to file with the county. Compl. ¶ 64. The property was sold at a tax sale, and the purchaser filed a quiet title action. Compl. ¶ 64. Defendant informed the purchaser's counsel that it was not going to dispute the quiet title action, and did not inform Plaintiff that there was a court action that would extinguish Plaintiff's interest. Compl. ¶ 64. Although the quiet title order was issued by the court, the title company required a release of the mortgage owned by Plaintiff, and Plaintiff needed an assignment of mortgage from Defendant, which Defendant refused to provide. Compl. ¶ 64. Defendant agreed to release the lien that secured a property that it no longer owned, and provided the assignment when threatened with a slander of title action by the purchaser's counsel. Compl. ¶ 64.

Plaintiff became aware of a Florida foreclosure action on a property where the first lien had been sold to Plaintiff and assigned by Plaintiff to its servicer, non-party Heritage Pacific Financial. Compl. ¶ 65. Heritage had to intervene in the foreclosure to protect its interest in the property. Compl. ¶ 65. Defendant initially denied that the lien upon which it was foreclosing was inferior to the lien purchased by Plaintiff. Compl. ¶ 65. Although Defendant eventually agreed that Plaintiff owned the superior mortgage, Plaintiff had to spend a significant amount of money in the foreclosure proceedings to protect its interest in the property. Compl. ¶ 65. The loan at issue had been provided to Plaintiff through ARC and Brunswick as part of an unsecured portfolio, and Defendant failed to provide an assignment of the mortgage securing it. Compl. ¶ 65.

5

Plaintiff alleges state law claims of replevin, unjust enrichment, intentional interference with contractual rights, negligent interference with contractual rights and conversion. Defendant removed this action from state court, and moved to dismiss.

**Legal standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**Discussion**

**1.     Plaintiff's replevin claim (claim 1) is dismissed with leave to amend.**

Plaintiff alleges that as the final purchaser of the subject loans, including assignments and allonges, Plaintiff is the true owner of the loans and the related loan and servicing files. Compl. ¶ 67. Defendant failed to transfer a vast majority of documents, including assignments and allonges, upon their sale and continued to refuse to transfer the documents when requests and inquiries were made by Plaintiff and Brunswick on Plaintiff's behalf. Compl. ¶ 68. Defendant withheld the

6

1 documents willfully. Compl. ¶ 69. Plaintiff has tried for over three years to obtain the documents it
2 purchased by making demands for production and delivery that Defendant has repeatedly denied.
3 Compl. ¶ 70. Plaintiff alleges that it is entitled to immediate possession of the notes and all loan
4 documentation relating to the subject loans in Defendant's control. Compl. ¶ 71. Plaintiff alleges
5 that Defendant's wrongful retention of the documents has caused Plaintiff to suffer financial losses
6 of at least $34,290,000. Compl. ¶ 72.

Plaintiff's replevin claim is purportedly based on California Code of Civil Procedure sections 627 and 667. However, the statutory basis for a replevin action is found in California Code of Civil Procedure section 512.010:

> (a) Upon the filing of the complaint or at any time thereafter, the plaintiff may apply pursuant to this chapter for a writ of possession by filing a written application for the writ with the court in which the action is brought.
> (b) The application shall be executed under oath and shall include all of the following:
> (1) A showing of the basis of the plaintiff's claim and that the plaintiff is entitled to possession of the property claimed. If the basis of the plaintiff's claim is a written instrument, a copy of the instrument shall be attached.
> (2) A showing that the property is wrongfully detained by the defendant, of the manner in which the defendant came into possession of the property, and, according to the best knowledge, information, and belief of the plaintiff, of the reason for the detention.
> (3) A particular description of the property and a statement of its value.
> (4) A statement, according to the best knowledge, information, and belief of the plaintiff, of the location of the property and, if the property, or some part of it, is within a private place which may have to be entered to take possession, a showing that there is probable cause to believe that such property is located there.
> (5) A statement that the property has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of the plaintiff; or, if so seized, that it is by statute exempt from such seizure.
> (c) The requirements of subdivision (b) may be satisfied by one or more affidavits filed with the application.

Cal. Code Civ. P. § 512.010. In California, courts allow for specific recovery of personal property and incidental damages. See Adler v. Taylor, 2005 WL 4658511, at * 3 (C.D. Cal. Feb. 2, 2005) (citing Fran-Well Heater Co. v. Robinson, 182 Cal.App.2d 125 (1960); Cal.Code Civ. P. § 511.010 et seq.). For specific recovery, Plaintiff only need show (1) a right to possession of the property, and (2) Defendant's wrongful possession. Id.

Although Plaintiff alleges that it has a right to possession of the documents at issue, that allegation is implausible given that Plaintiff cannot enforce rights arising under contracts to which it

7

is not a party and it is undisputed that Plaintiff is not a party to the contract between Defendant and ARC. See Jones v. Aetna Casualty & Surety Corp., 26 Cal.App.4th 1717, 1722 (1994) ("Thus, someone who is not a party to the contract has no standing to enforce it or to recover extra-contractual damages for the wrongful withholding of benefits to the contracting party."). In addition, Plaintiff has not plausibly alleged that it is a third party beneficiary to Defendant's contract with ARC. See Berclain America Latina v. Baan Co., 74 Cal.App.4th 401, 405 (1999) ("It is elementary that a party asserting a claim must have standing to do so. In asserting a claim based upon a contract, this generally requires the party to be a signatory to the contract, or to be an intended third party beneficiary."). Thus, Plaintiff has not stated an entitlement to the documents *from Defendant,* and has not stated a claim for replevin. See Credit Bureau of San Diego, Inc. v. Horeth, 60 Cal.App.2d 47, 48 (1943) ("The general rule is that a complaint for the recovery of personal property must allege ownership and right of possession, or facts showing right of possession at the time the action was filed."). At the hearing, Plaintiff sought leave to amend the complaint to add facts relating to its right to possess the documents. Leave to amend is liberally granted. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990) (leave to amend granted with "extreme liberality").

Plaintiff also seeks attorney's fees in connection with the replevin action. Compl. ¶ 73. However, Plaintiff would not be entitled to fees for this claim. See Le Fave v. Dimond, 46 Cal.2d 868, 870 (1956) ("Section 512 of the Code of Civil Procedure, which sets forth the requirements of the undertaking to be furnished in claim and delivery, provides for the payment to the defendant 'of such sum as may from any cause be recovered against the plaintiff.' Section 667 of the Code of Civil Procedure permits either the plaintiff or the defendant in a replevin action to recover judgment for the possession of the property or its value and, in addition, damages for its taking and detention. It is clear that there is no express authority for the allowance of attorney's fees in claim and delivery, and the cases have uniformly refused to award such fees as damages in actions for the recovery of personal property.") (internal citation omitted).

Thus, Defendant's motion to dismiss Plaintiff's replevin claim is granted with leave to amend as to Plaintiff's right to possess the documents, but not as to attorney's fees.

8

**2.      Plaintiff's unjust enrichment claim (claim 2) is dismissed with leave to amend.**

Defendant's motion to dismiss Plaintiff's unjust enrichment claim is directed only at the allegedly missing loan documents, not at alleged post-sale conduct. Plaintiff alleges that Defendant entered into a sales contract with ARC promising to transfer and convey full loan and servicing files along with the subject loans even though Defendant had no intention of transferring those files. Compl. ¶ 75. Plaintiff alleges that ARC used the same sales contract to market and sell the subject loans on the secondary market where Plaintiff purchased them. Compl. ¶ 75. Plaintiff alleges that Defendant wrongfully obtained the benefits of selling the subject loans on the secondary market at the expense of Plaintiff. Compl. ¶ 76. Plaintiff has been unable to litigate or collect on most of the subject loans due to the absence of allonges, proper assignments and other loan documentation. Compl. ¶ 77.

"The elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" Peterson v. Cellco P'ship, 164 Cal.App.4th 1583, 1593 (2008) (internal citations omitted). Here, Plaintiff has not plausibly alleged a basic element of the unjust enrichment claim: that Defendant received the benefit *at Plaintiff's expense*. According to the complaint, Defendant sold the loans to ARC, which sold them to Brunswick, which sold them to Plaintiff. Compl. ¶¶ 16-22. The complaint alleges that ARC was authorized by Defendant to find buyers for the portfolios, and that Plaintiff agreed to purchase the loans from ARC using Brunswick. Compl. ¶¶ 14, 15. Plaintiff alleges that Defendant knew that the loans were passing through ARC to another purchaser. Compl. ¶¶ 18, 19. However, there is no allegation that Defendant knew that Plaintiff would be the final purchaser of the loans.

Thus, Plaintiff has failed to state a claim for unjust enrichment against Defendant. Because leave to amend is freely granted, the Court grants Plaintiff leave to amend this claim.

**3.      Plaintiff's claim for intentional interference with contractual relations (claim 3) is dismissed with leave to amend.**

Defendant's motion to dismiss Plaintiff's intentional interference with contractual relations claim is directed only at the allegedly missing loan documents, not at alleged post-sale conduct. Plaintiff alleges that when it purchased the unpaid promissory notes on the secondary market, it became the entity entitled to payments on those notes, and that the notes and mortgages created a

9

contract between the debtor and Plaintiff. Compl. ¶¶ 84-85. Plaintiff alleges that Defendant knew that promissory notes constitute contracts between the noteholder and the debtor, that mortgages are enforceable contracts between the mortgagee and the owner of the note, and that servicing files and payment records are necessary when taking action to enforce the contracts. Compl. ¶ 86. Plaintiff alleges that Defendant knew that Plaintiff was the ultimate purchaser of the subject loans as early as January 2011, when Plaintiff began asking Defendant for loan documents. Compl. ¶ 87.

Defendant argues that this claim fails because the sole act of interference alleged by Plaintiff is grounded in obligations allegedly arising from Defendant's contract with ARC. A tortious interference with contract claim does not lie against a party to that contract:

> California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract. "It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract." (Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50 Cal.3d 1118, 1126 [270 Cal.Rptr. 1, 791 P.2d 587], italics added.).
>
> However, consistent with its underlying policy of protecting the expectations of contracting parties against frustration by outsiders who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with a contract does not lie against a party to the contract. (Shoemaker v. Myers, supra, 52 Cal.3d at pp. 24-25; Kelly v. General Telephone Co. (1982) 136 Cal.App.3d 278, 288 [186 Cal.Rptr. 1844]; Dryden v. Tri-Valley Growers (1977) 65 Cal.App.3d 990, 998 [135 Cal.Rptr. 7200].).
>
> Applied's conspiracy theory is fundamentally irreconcilable with the law of conspiracy and the tort of interference with contract as just discussed. One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms. The tort duty not to interfere with the contract falls only on strangers-interlopers who have no legitimate interest in the scope or course of the contract's performance.

Applied Equip. Corp., 7 Cal.4th at 514; see also Fresno Motors, LLC v. Mercedes-Benz USA, LLN, 852 F. Supp. 2d 1280, 1293 (E.D. Cal. 2012) ("The Court finds that under California law, as recognized by the Ninth Circuit, a claim for tortious interference of contract and prospective economic advantage may only lie against "strangers" or interlopers who do not have a direct and significant interest in the plaintiff's contractual relationship with another individual or entity.").

Here, Plaintiff's tortious interference claim appears to be based on Defendant's contractual obligations to ARC, but Plaintiff does not have the right to enforce that contract. In the opposition, Plaintiff seeks leave to amend the complaint to provide clarity that the crux of the claim is that

10

Defendant induced ARC to breach its contract with Brunswick, in whose shoes Plaintiff stands for purposes of the litigation. Opp. at 11. Plaintiff concedes that the complaint does not contain allegations that the basis for the claim lies in the assignment of the purchase agreements by Brunswick to Plaintiff. Therefore, Defendant's motion to dismiss Plaintiff's intentional interference with contractual relations claim is granted with leave to amend.

**4.      Plaintiff's claim for negligent interference with contractual relations (claim 4) is dismissed without leave to amend.**

In California there is no cause of action for negligent interference with contractual relations. See Davis v. Nadrich, 174 Cal.App.4th 1, 9 (2009). While there exists a cause of action for negligent interference with prospective economic advantage (J'Aire Corp. v. Gregory, 24 Cal.3d 799 (1979)), the California Supreme Court in Fifield Manor v. Finston, 54 Cal.2d 632 (1960), has rejected a cause of action for negligent interference with contract. Therefore, Plaintiff's claim for negligent interference with contractual relations is dismissed without leave to amend.

**5.      Plaintiff's conversion claim (claim 5) is dismissed with leave to amend.**

Plaintiff alleges that Defendant unlawfully exercised ownership rights over the subject loans, the notes and the mortgages that comprise the subject loans, and the servicing and loan files associated with the loans. Compl. ¶ 112. Plaintiff alleges that even though the notes were sold to Plaintiff, Defendant has been collecting on at least some of them. Compl. ¶ 113. Plaintiff alleges that even though the chain of contracts for the subject loans state that loan and servicing files would be transferred with the sale of the loans, Defendant has refused to provide them to Plaintiff. Compl. ¶ 114. Defendant moves to dismiss this claim on both bases, that is, the alleged post-sale collection activity and the retention of documents.

**A.      Retention of documents as a basis for conversion**

The elements of a conversion action are "the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." Haro v. Ibarra, 180 Cal.App.4th 823, 835 (2009) (internal citations omitted). "Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." Moore v. Regents of Univ. of Cal., 51 Cal.3d 120, 136 (1990) (internal citations omitted).

11

Plaintiff argues that an owner need not be in actual possession of the property to support a conversion claim. See Reynolds v. Lerman, 138 Cal.App.2d 586, 596 (1956). Further, "it is not essential that the plaintiff shall be the absolute owner of the property converted but she must show that she was *entitled to immediate possession at the time of conversion*." Messerall v. Fulwider, 199 Cal.App.3d 1324, 1329 (1988) (emphasis in original). Plaintiff argues that in order to determine whether a plaintiff has established a property right in certain property, courts apply a three-factor test:

> Property is a broad concept that includes "every intangible benefit and prerogative susceptible of possession or disposition." Downing v. Mun. Court, 88 Cal.App.2d 345, 350, 198 P.2d 923 (1948) (internal quotation marks omitted). We apply a three-part test to determine whether a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity."

Kreman v. Cohen, 337 F.3d 1024, 1030 (9th Cir. 2002). Kreman, however, addressed the question of whether an intangible item, such as a domain name, could convey a property right. Here, it is clear that the documents are tangible property, so the three-part test is not applicable.

Plaintiff's conversion claim based on the retention of documents is premised on the contract between Defendant and ARC to provide Plaintiff's alleged ownership and right to possession of the documents. However, as described above, Plaintiff is not a party to the contract between Defendant and ARC, so it cannot show that it is entitled to documents from Defendant. Thus, this claim is dismissed with leave to amend.

### B.     Post-sale conduct

Defendant argues that this aspect of Plaintiff's claim fails because it is a claim for an unspecified amount of money, which cannot be the basis for a conversion claim. See PCO, Inc. v. Christiansen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, 150 Cal.App.4th 384, 395 (2007) ("Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. [Citation.]". . . . A "generalized claim for money [is] not actionable as conversion.") (internal citations omitted). Defendant argues that the complaint does not state a specific sum that Defendant collected through alleged post-sale collection activities. See

Williamson v. Reinalt-Thomas Corp., 2012 U.S. Dist. LEXIS 58639, at *12 (N.D. Cal. Apr. 25, 2012) (granting motion to dismiss conversion claim, stating: "Thus, a claim for conversion may be stated when there is a special relationship between the parties where the defendant has a duty to retain or apply funds on the plaintiff's behalf," because plaintiff "had not overcome the general rule in California that the object of a conversion claim cannot be money" where the plaintiff had failed to allege a special relationship between the parties and failed to show the money was misappropriated when held in benefit for the plaintiff); Nat'l Union Fire Ins. Co. v. Res. Dev. Servs., 2010 U.S. Dist. LEXIS 120961, at *15 (N.D. Cal. Nov. 16, 2010) ("Conversion of money generally is not a permitted claim unless it involves the misappropriation of a definite sum held for the benefit of another.").

Plaintiff argues, however, that money can be the subject of a conversion claim under certain circumstances, and it is "not necessary that each coin or bill be earmarked." Williamson, 2012 U.S. Dist. LEXIS 58639, at *11. Plaintiff argues that here, the specific sums at issue are capable of identification by referring to the terms of each individual loan. However, the current complaint contains only a generalized claim for money. Therefore, the conversion claim based on the post-sale documents is dismissed with leave to amend.

**Conclusion**

Defendant's motion to dismiss is granted with leave to amend as to some claims as stated in this Order. However, Plaintiff is cautioned not to reallege claims that it cannot bring in good faith, given the undisputed fact that it is not a party to the contract between Defendant and ARC. Any amended complaint shall be filed no later than February 25, 2014.

**IT IS SO ORDERED.**

Dated: February 11, 2014

_____
ELIZABETH D. LAPORTE
United States Chief Magistrate Judge

13