UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HP DEBT EXCHANGE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No. 13-cv-04717-EDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING AS MOOT DISCOVERY MOTIONS AND SANCTIONS MOTIONS**<br><br>Re: Dkt. No. 53, 54, 55, 62, 63, 64, 74, 75 |

In this tort action, Plaintiff alleges that Defendant breached contracts with Plaintiff with respect to the sale of mortgage loans. Following two motions to dismiss in this case, a single claim for conversion remains. Plaintiff alleges that Defendant has unlawfully exercised ownership rights over the subject loans, and that even though the notes were sold to Plaintiff, Defendant has collected on at least one of them in the amount of $2,675.00. Am. Compl. ¶ 92. Plaintiff alleges that in settling that debt and in engaging in other conduct, Defendant converted the borrowers' monies, which should have gone to Plaintiff. Am. Compl. ¶ 93.

On August 27, 2014, Defendant filed a third motion to dismiss. Subsequently, the parties filed a total of seven discovery motions and sanctions motions. On October 14, 2014, the Court held a hearing on the parties' motions. For the reasons stated at the hearing and in this Order, Defendant's Motion to Dismiss is granted. The parties' discovery motions and sanctions motions (docket nos. 53, 54, 55, 63, 64, 74, 75) are denied as moot.

**Discussion**

A jurisdictional challenge may be facial or factual. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir.2004). Where, as here, the attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations." Safe Air for Everyone, 373 F.3d at 1039. In

resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. See id.; McCarthy v. United States, 850 F.2d 558, 560 (9th Cir.1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"). Once a party has moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the opposing party bears the burden of establishing the Court's jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010).

Conversion is "the wrongful exercise of dominion over the property of another." Oakdale Vill. Grp. v. Fong, 43 Cal.App.4th 539, 543 (1996). The elements of a conversion claim are: (1) that the plaintiff owns or has a right to possess the property at issue; (2) that the defendant intentionally prevented the plaintiff from having access to the property for a significant period of time, refused to return the property upon plaintiff's demand, or otherwise wrongfully disposed of the property; (3) that the plaintiff did not consent, and (4) damages. Burlesci v. Peterson, 68 Cal.App.4th 1062, 1066 (1998); Enterprise Leasing Corp. v. Shugart Corp., 231 Cal.App.3d 737, 748 (1991). "Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved[.]" PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal.App.4th 384, 395 (2007). While a specific sum must be capable of identification, the law does not require a plaintiff to identify the physical coins or notes allegedly converted. Haigler v. Donnelly, 18 Cal.2d 674, 681 (1941). California courts generally permit actions for conversion where a readily ascertainable sum has been misappropriated, commingled, or misdirected. PCO, 150 Cal.App.4th at 396.

Plaintiff's conversion claims states:

> 91. HP Debt repeats and re-alleges each and every allegation above as if fully set forth herein.
>
> 92. Defendant has unlawfully exercised ownership rights over the subject loans. Even though the promissory notes were sold to HP Debt, Defendant has been collecting on some of those notes and has settled at least one. Defendant has collected a certain sum

2

which the amount is unknown to Plaintiff at this time. Defendant settled one of the subject loan debt with a borrower, Victor Milbourne, for $2,675.

93. Defendant, in accepting that settlement payment, converted Milbourne's and the other borrowers monies, which should have gone to HP Debt.

94. HP Debt has been foreseeably and directly harmed by Defendant's exercise of ownership rights over the subject loans and by Defendant's conversion of monies that should have gone to HP Debt.

95. Although currently Plaintiff is only aware of the amount of conversion from Milbourne's loan, the discovery will uncover that certain amounts of money were wrongfully collected and converted by Defendant.

Am. Compl. ¶¶ 91-95. Thus, by its terms, the conversion claim is confined to alleged post-sale collection of certain sums on loans owned by Plaintiff. Although Plaintiff's conversion claim focuses on four loans: (1) the Milbourne loan; (2) the Ross loan; (3) the Garcia loan; and (4) the Knapper loan (see Am. Compl. ¶¶ 42-45), it is undisputed that there was only collection alleged as to the Milbourne loan. Further, as stated at the hearing, the Knapper loan is no longer in dispute.

Defendant argues that because Plaintiff has admitted in discovery responses that it does not own the Milbourne loan or the other three loans at issue in this case, Plaintiff lacks standing for conversion. "[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify the exercise of the court's remedial powers on his behalf." Warth v. Seldin, 422 U.S. 490, 498–99 (1975) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). There are three requirements for standing: (1) "a plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical;' " (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court;' " and (3) "it must be 'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61

3

(1992) (citations omitted); see also, e.g., Green v. Alliance Title, 2010 U.S. Dist. LEXIS 92203, at *14 (E.D. Cal. Sept. 2, 2012) (finding that the plaintiff lacked standing for her HOEPA claim because the plaintiff acknowledged that she was not the owner of the subject property at the time of the loan origination at issue nor did she obtain the loan at issue).

Because "injury" is a requirement under both Article III and Plaintiffs' individual causes of action, "the threshold question of whether [Plaintiffs have] standing (and the [C]ourt has jurisdiction) is distinct from the merits of [Plaintiffs'] claim." Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir.2011). The issue of whether Plaintiff has established standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." Warth, 422 U.S. at 500, 95 S.Ct. 2197; accord Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo, 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits."). In other words "[a] plaintiff may satisfy the injury-in-fact requirements to have standing under Article III, and thus may be able to 'bring a civil action without suffering dismissal for want of standing to sue,' without being able to assert a cause of action successfully." In re Facebook Privacy Litig., 791 F.Supp.2d 705, 712 n. 5 (N.D.Cal.2011) (citing Doe v. Chao, 540 U.S. 614, 624–25, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004)).

**Milbourne loan**

According to the complaint, the Milbourne loan is the only loan on which Defendant allegedly wrongfully collected a sum certain. Defendant's primary argument with respect to the Milbourne loan is that Plaintiff does not own the loan and so cannot maintain a conversion claim. In response to discovery requesting that Plaintiff identify the loans it had "sold, or otherwise transferred any interest in, to any other person or entity," Plaintiff produced, among other things, a Loan Status Report of its own creation. Morales Decl. Ex. H. The Loan Status Report contains columns that indicate for each individual loan whether it had been sold, the name of the entity to which the loan was sold, and the date of the sale. Id. The Loan Status Report represents that on December 20, 2010, Plaintiff sold approximately 94 loans, including the Milbourne loan, to Summit Real Estate Partners L.P. The Loan Status Report also states that the loans were transferred back to Plaintiff as of May 31, 2012. Morales Decl. Ex. H at WF MTD0107.

Defendant argues, however, that the Summit loans have not been transferred back to Plaintiff because in another case between Plaintiff and Summit in Texas, the court ordered Plaintiff to pay Summit approximately $180,000, and upon payment, the loans were to be transferred back to Plaintiff. Morales Decl. Ex. J. It is undisputed that Plaintiff has not paid the money to Summit. See Morales Decl. ¶ 12; Ex. M. Therefore, Defendant argues that the Milbourne loan has not been transferred back to Plaintiff and was not owned by Plaintiff when the conversion allegedly took place in December 2012.

Plaintiff's primary counterargument is that in a conversion action, Plaintiff need show only that he is entitled to possession at the time of conversion, not when the claim is brought or at trial. See Enterprise Leasing Corp. v. Shugart Corp., 231 Cal.App.3d 737, 749 (1991) ("In a conversion action the plaintiff need show only that he was entitled to possession at the time of conversion; the fact that plaintiff regained possession of the converted property does not prevent him from suing for damages for the conversion."); Plummer v. Day/Eisenberg LLP, 184 Cal.App.4th 38, 45 (2010) ("Neither legal title nor absolute ownership of the property is necessary. A party need only allege it is entitled to immediate possession at the time of conversion.") (internal citation omitted). Thus, Plaintiff argues that at the time of the December 2012 conversion of the Milbourne loan, Plaintiff owned the loan because the Texas court had previously determined that the loan sale agreement between Plaintiff and Summit was rescinded (Morales Decl. Ex. J), which had the effect of voiding the contract *ab initio*. See Long v. Newlin, 144 Cal.App.2d 509, 512 (1956) ("The effect of a rescission is to void the contract ab initio."). Plaintiff cites Asmus v. Pacific Bell, 23 Cal.4th 1, 6, n.1 (2000) for the proposition that rescission extinguishes the contract as if it never existed. However, this statement is contained in dicta in a footnote. Asmus, 23 Cal.4th at 6, n.2 ("A contract rescission is a statutorily governed event that extinguishes a contract as if it never existed."). Asmus did not opine as to whether that dicta would apply to the situation in this case where the judge expressly conditioned the return of the loans to Plaintiff on Plaintiff's payment -- a condition that Plaintiff has not met.

Plaintiff argues that Summit never had an ownership interest in the loans. Plaintiff states that the Texas court simply ordered the restoration of benefits to restore the *status quo ante*,

5

meaning that Summit could hold on to the documentation until Plaintiff restored the purchase price, but Plaintiff argues that this did not give Summit an ownership interest in the loans as the sale was voided by the court. To the extent that Plaintiff argues that it owns the loans regardless of whether it ever pays Summit the restitution, its argument is not persuasive. The Texas court specifically stated that Summit need only reconvey the loans -- as well as the documentation -- after receiving Plaintiff's payment. Morales Decl. Ex. J (". . . upon complete satisfaction of this Order by [Plaintiff HP Debt], including payment of $181,239.77 together with any accrued interest, . . . then Summit shall reconvey all of the mortgage loans contained in the Agreement to Defendant and shall return all documents in Summit's possession related to those mortgage loans. . . ."). Moreover, in a rescission case, a court may make any orders "which justice may require and may otherwise in its judgment adjust the equities between the parties." Cal. Civ. Code § 1692. The judge did just that, and Plaintiff cannot read that provision out of the court's order.

Therefore, Plaintiff has not shown that it owned the Milbourne loan at the time of the alleged conversion. Plaintiff states that it owned the loan at some time from 2010 to the present, but there has been no showing that it owned the loans, or had a right to possession, as of the December 2012 alleged conversion. Plaintiff sold the loans to Summit, and even though it may become entitled to possession of the loans once it pays Summit, Plaintiff has not shown that it was entitled to possession of or had ownership in the Milbourne loan as of the alleged conversion in December 2012. Thus, Plaintiff lacks standing to proceed on the Milbourne loan.

**Ross loan**

Plaintiff alleges that the Ross loan was "owned by HP Debt" and was "still secured by property." Am. Compl. ¶ 43. Plaintiff also alleges that Defendant "never informed HP Debt that there was a [quiet title] court action occurring that would extinguish the security associated with the note owned by HP Debt," and that Defendant "only provided an assignment when threatened with a slander of title action by the [tax sale] purchaser's attorney." Am. Compl. ¶ 44.

Plaintiff has not alleged a conversion of the Ross loan. First, Plaintiff cannot show ownership or right to possession at the time of conversion, which was December 2010. Plaintiff states that the Ross loan was purchased in December 2010 and at the time it was purchased, it was

6

secured by a second mortgage. Plaintiff also states that at the time the loan was purchased, the property securing the loan was in its redemption period pursuant to a tax sale, but that Plaintiff was never informed of the redemption period or the tax sale, so it was unable to record the assignment in order to receive notice and was unable to redeem the property under the secured note. Ganter Decl. ¶ 2. Thus, Plaintiff's conversion theory is that Defendant interfered with Plaintiff's second mortgage by failing to inform Plaintiff of the tax sale, failing to issue a proper assignment and then releasing all claims, including Plaintiff's claims, in the property, which Defendant had no right to do. Ganter Decl. ¶ 2. Plaintiff further argues that because the property was sold to a third party at a tax sale, and Defendant released Plaintiff's interest, a judgment was entered in favor of the purchaser of the property terminating any future interest in the property. Ganter Decl. ¶ 2.

However, Plaintiff sold the Ross loan on March 4, 2011, and the majority of the allegations concerning the loan occurred well over one year after Plaintiff sold the loan, including that Defendant waived all interest in the property in August 2012. Am. Compl. ¶¶ 43-44. Further, the failure to tell Plaintiff of a tax sale does not constitute conversion because conversion requires a right to possession, whereas Plaintiff faced several intervening steps before redemption could occur even if it had received notice. See Home v. Kramer, 7 Cal.2d 361, 363-64 (1936) ("Conversion is a tort, and to establish it there must be a tortious act. On the facts here appearing we fail to find any positive or tortious acts amounting to a conversion. The possession of the property has not been changed by any act of the defendant. There was not a sale of the fixtures in defiance of the claim of plaintiff, if any he had."). In addition, the failure to forward a tax sale notice, without an intent to exercise control over the property, is insufficient to establish conversion. See Jordan v. Talbot, 55 Cal.2d 597, 610 (1961) ("We there stated that '[w]here the conduct complained of does not amount to a substantial interference with the possession or the right thereto, but consists of intermeddling with or use of or damages to the personal property, the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use.'") (internal citation omitted). Finally, Defendant notes that Plaintiff filed a bona fide owner affidavit and released the lien on

7

this property in January 2013. Morales Decl. Ex. L. However, the loan did not belong to Plaintiff in January 2013.

**Garcia loan**

Plaintiff alleges that it "had to intervene in [the Garcia] foreclosure to protect its interest in the property" and "Defendant initially denied that the lien upon which it was foreclosing was inferior to the lien purchased by HP Debt." Am. Compl. ¶ 45. In particular, Plaintiff alleges that:

> HP Debt became aware of a Florida foreclosure action (against borrower Octavio Garcia) on a property whose first lien had, in fact, been sold to HP Debt (and assigned by HP Debt to its servicer, Heritage Pacific Financial.). Heritage Pacific Financial had to intervene in the foreclosure to protect its interest in the property. Defendant initially denied that the lien upon which it was foreclosing was inferior to the lien purchased by HP Debt. Although Defendant eventually agreed that HP Debt owned the superior mortgage, HP Debt had to spend a significant amount of money intervening in this foreclosure and protecting its interest in the property. The Octavio Garcia loan was also sold to HP Debt as part of an "unsecured" portfolio, so Defendant failed to provide an assignment of the mortgage securing it.

Am. Compl. ¶ 45. Plaintiff also stated that as recently as April 2012, Defendant pursued foreclosure on the Garcia loan, even though Defendant knew that Plaintiff was the rightful owner of the loan. Pl.'s Ex. B.

Plaintiff has not alleged facts that show conversion for the Garcia loan, and alternatively, any alleged injury would be speculative. The primary allegation regarding conversion appears to be that Plaintiff had to spend a significant amount of money to protect its interest in the property, which it presumably was able to do. Therefore, Plaintiff alleges at most an attempted conversion, rather than an actual conversion. See Jordan v. Talbot, 55 Cal.2d 597, 610 (1961) (". . . [w]here the conduct complained of does not amount to a substantial interference with the possession or the right thereto, but consists of intermeddling with or use of or damages to the personal property, the owner has a cause of action for trespass or case," but not conversion). Plaintiff has not alleged that Defendant "intentionally prevented the plaintiff from having access to the property for a significant period of time, refused to return the property upon plaintiff's demand, or otherwise wrongfully disposed of the property," which is the second element of conversion. Plaintiff has alleged that Defendant tried to, but did not, claim the superior lien on the property. Also, although

8

1  Plaintiff claims that it incurred legal fees to prevent Defendant from converting the Garcia
2  property, attorney's fees do not appear to be recoverable in a claim for conversion. See Pl.'s Ex.
3  G, Pl.'s Response to Int. 6 (stating its damages for the Garcia loan are its "legal expenses for
4  Octavio Garcia interpleader action in Florida); Directi Internet Solutions Pvt. Ltd v. Dhillon, 2013
5  U.S. Dist. LEXIS 15706, at *16 (E.D. Cal. Feb. 5, 2013) (citing Haines v. Parra, 193 Cal. App.3d
6  1553, 1559, 239 Cal. Rptr. 178 (1987) ("Section 3336 of the Civil Code, which sets out the
7  measure of damages in conversion actions, does not expressly provide for attorneys' fees for the
8  converting of property.")). Thus, Plaintiff does not state a claim for conversion based on this loan,
9  regardless of standing.

Defendant also argues that Plaintiff lacks standing because Heritage Pacific Financial, not Plaintiff, owns the loan. The Loan Status Report states that Plaintiff is the owner of the loan (Morales Decl. Ex. H at WF MTD0120), but the complaint states that the loan was assigned to Heritage Pacific Financial, which is the loan servicer. Plaintiff states in the opposition that the Loan Status Report names Heritage as the owner, but that is not correct. Plaintiff also argues that Plaintiff and Heritage are alter egos, citing two filings in this case. See Gatner Decl. Ex. D (2/28/14 Notice of Appearance and Creditor's Judgment Lien against Plaintiff by Maribel Monroy, stating that judgment debtor Heritage is the alter ego of Plaintiff, and attaching a bankruptcy court order to that effect); Gatner Decl. Ex. D (6/2/14 Notice of Lien, attaching the same bankruptcy order). Defendant, however, notes that Plaintiff has also argued that Heritage is *not* its alter ego. In a bankruptcy proceeding, Plaintiff argued that it was independent of Heritage. Morales Supp. Decl. Ex. O at WF MTD0162. Defendant argues persuasively that if Plaintiff and Heritage are alter egos, then Plaintiff's claims against Defendant belong to Heritage's bankruptcy estate, and only the bankruptcy trustee has standing. Thus, Plaintiff lacks standing to bring a conversion claim with respect to the Garcia loan. Further, Plaintiff has not shown that Defendant deprived Plaintiff of access to its property for purposes of conversion.

**Conclusion**

Plaintiff lacks standing for its conversion claim as to the three loans still at issue. Therefore, Defendant's motion to dismiss is granted. The remaining discovery motions and

1 | sanctions motions are denied as moot.

2 | **IT IS SO ORDERED.**

3 | Dated: Oct 20, 2014

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge